Argued September 5; affirmed October 2, 1945

DUKE ET AL. *v.* FRANKLIN ET AL.

(162 P. (2d) 141)

*Mason Dillard,* of Portland, for appellant.

*Wilber Henderson,* of Portland (Stephen F. Chadwick, of Seattle, Washington, on the brief), for intervenors and respondents.

BAILEY, J.   This is an appeal by Tom Ray from a decree awarding judgment against him in the sum of $10,000 and in favor of A. E. Jordan and Jerry Martindale, president and secretary respectively of Mt. Hood Lodge 72, International Brotherhood of Boiler Makers, Iron Ship Builders and Helpers of America, an unincorporated, voluntary association of individuals, hereinafter referred to as local 72, operating under and by virtue of a charter issued to it by the International Brotherhood of Boiler Makers, Iron Ship Builders and Helpers of America.

Most of the assignments of error relate to procedural matters and it will be necessary therefore to refer briefly to the pleadings in the case. In February, 1943, Russell W. Duke, a member in good standing of local 72, instituted in the circuit court for Multnomah county a suit on behalf of himself and other members of that local against J. A. Franklin, Charles McGowan

and William Walters, president, vice-president and secretary-treasurer respectively, of the International Brotherhood, Thomas Crowe, special representative and executive assistant of J. A. Franklin, and the following officers and trustees of local 72: Earl Ingram, president, Hugh Fagan, vice-president, Joe Sutherland, treasurer, Harold T. Poor, recording secretary, Tom Ray, financial secretary, corresponding secretary, and business agent, and Elmer Mayer, Allen Inabit, and Hugh Fagan, trustees.

The complaint alleged that the defendants had entered into a conspiracy to "take over said local and remove the funds of said local to Kansas City, Kansas, and beyond the jurisdiction of this court", and that defendants Ingram, Fagan, Sutherland, Mayer, Ray and Inabit had misappropriated the funds of local 72 and had refused and failed to cause an audit to be made of the financial affairs of the association. The prayer of the complaint asked, among other things, for an accounting and repayment by the defendants last above-named "of all sums found to have been illegally, improperly or improvidently expended and to be due to Local No. 72 by all or such of the defendants as are determined to be responsible therefor". Thereafter and on July 20, 1943, the petition of A. E. Jordan, a member of local 72, to intervene as a plaintiff in the suit was allowed. Subsequently thereto and on October 14, 1943, Russell W. Duke and A. E. Jordan filed a supplemental complaint requesting that Otto W. Mursener, international vice-president and personal representative of defendant Franklin, be made a party defendant, and that a receiver be appointed. By order of court Mursener was joined as a party defendant. A second supplemental complaint was filed by the same two plaintiffs on November 18, 1943, and on November

20, 1943, they filed a third supplemental complaint. In the last supplemental complaint it was alleged that on November 18, 1943, an alleged "committee of 21" of local 72 had illegally and in violation of the order of the court paid to defendant Ray $10,000 from the funds of local 72. The prayer of the second and third supplemental complaints asked for the appointment of a receiver and for other relief.

On January 17, 1944, the circuit court of Multnomah county appointed a receiver for local 72 in a suit in which O. W. Mursener, acting for and on behalf of the International Brotherhood, was plaintiff and M. K. Forte and others were defendants. Thereafter and on the 23rd day of March, 1944, A. E. Jordan and Walter Goodland, president and secretary respectively of local 72, filed in the instant suit, with the permission of the court, a complaint in intervention in which it was alleged that Tom Ray, on or about the 18th day of November, 1943, had wrongfully and unlawfully taken from the funds of local 72 the sum of $10,000, and had refused to return the money so taken to local 72, and that the plaintiffs in the complaint in intervention, to wit, Jordan and Goodland, had been authorized and directed by local 72 to file such complaint "and especially to prosecute said suit insofar as the same relates to the recovery from defendant, Tom Ray, of the sum of $10,000 taken by him from the funds belonging to said Lodge 72 on or about the 18th day of November, 1943." The prayer of the complaint in intervention asked for judgment against Tom Ray in the sum of $10,000, with interest, and for such other and further and different relief as the court might deem equitable. Jerry Martindale was later elected secretary of local 72 and was substituted for Walter Goodland as a party plaintiff.

No attempt is made here to give a detailed statement of the pleadings. Issue had been joined on the averments of the original and supplemental complaints and several days had been devoted to the trial of the case prior to the filing of the complaint in intervention by Jordan and Goodland, but the taking of evidence had not been concluded. In their complaint in intervention Jordan and Goodland did not ask for other or different relief from that prayed for in the original and supplemental complaints. The question of an accounting by Ray of the $10,000 and of any other moneys which he had misappropriated was an issue in the case before the complaint in intervention was filed. In fact evidence concerning the receipt of the $10,000 by Ray had already been introduced.

■ The aid of a court of equity had been invoked by Duke, and properly so, in his litigation against the officers of the International Brotherhood and local 72. The relief which he was asking on his own behalf and for the other members of local 72 could not have been granted in a court of law. Besides an accounting by the officers of local 72 he was requesting an order restraining all the defendants from removing the records and funds of local 72 beyond the jurisdiction of the court. An audit of the financial affairs of local 72 could not have been made without access to the records of the association, and without such an audit the amount of money misappropriated could not have been ascertained. The equity court having acquired jurisdiction for the purpose of enjoining the defendants from removing the records and funds of the local association and for an accounting by such of the defendants who were alleged to have misappropriated the funds of local 72, it retained jurisdiction to enter judgment against Ray for any funds which he had

illegally, or wrongfully, received from local 72, including the $10,000. *Oregon-Washington R. & N. Co. v. Reed,* 87 Or. 398, 415, 169 P. 342, 170 P. 300; *Ruby v. West Coast Lumber Co.,* 139 Or. 388, 393, 10 P. (2d) 358.

■ Section 1-316, O.C.L.A., provides that "any person who has an interest in the matter in litigation may, by leave of court, intervene in the suit, action or proceeding" at any time before trial. The appellant contends that, inasmuch as the application to intervene was not made until after the trial of the case had begun, it came too late and the court had no authority to permit Jordan and Goodland, as officers of local 72, to file their complaint in intervention. The section to which we have just referred was enacted in 1921 (Chap. 408, Laws 1921). Before the passage of this act courts of equity had the discretionary power to permit intervention at any time during the trial of a cause. 21 C. J., Equity, §§ 338 and 340, pp. 341 and 343; 30 C. J. S., Equity, §§ 161 and 162, p. 604; *State v. Farmers State Bank,* 103 Neb. 194, 170 N. W. 901; *Engdahl v. Laverty,* 110 Neb. 672, 194 N. W. 862; *Hartford Accident & Indemnity Co. v. Nelson Mfg. Co.,* 160 Miss. 504, 135 So. 349; *Paine v. Copper Belle Mining Co.,* 13 Ariz. 406, 114 P. 964.

The foregoing section applies not only to suits but to actions and other proceedings. It provides in part as follows: "Intervention takes place when a third person is permitted to become a party to a suit, action or proceeding between other persons, either by joining the plaintiff in claiming what is sought by the complaint, or by uniting with the defendant in resisting the claims of the plaintiff, or by demanding anything adversely to both the plaintiff and defendant, * * *."

In their complaint in intervention Jordan and Goodland were not demanding anything adversely to the plaintiff but were seeking the same relief. Under the provisions of § 1-316, *supra,* they were in effect asking permission to join Duke, as plaintiffs, in the prosecution of the case.

This suit was brought by Duke, not only on his behalf but on behalf of all the members of local 72, pursuant to § 9-106, O. C. L. A., which, among other things, provides that "when the question is one of a common or general interest of many persons, or when the parties are very numerous, and it may be impractical to bring them all before the court, one or more may sue or defend for the benefit of the whole." When a suit is brought by one or more individuals on behalf of all the members of an association, an application of other members to join as plaintiffs is generally granted. *White v. British Type Investors, Inc.,* 130 N. J. Eq. 157, 21 A. (2d) 681. Local 72, by and through its regularly constituted officers, authorized and directed Jordan and Goodland to intervene in the suit. In view of the facts in the case, we are of the opinion that the court, in the exercise of sound discretion, had the right to permit such intervention. There was no abuse of that discretion nor was defendant Ray prejudiced by the action of the court.

Moreover, we do not think that the legislature, by the enactment of § 1-316, *supra,* intended to deprive a court of equity of its then existing discretionary power to permit an interested party to intervene after the trial of the case had begun. As was said in *Paine v. Copper Belle Mining Co.,* supra: "The right to intervene under paragraph 1278, R. S. 1901, is limited to any time before trial. Prior to trial the court must hear and determine an application in intervention. Sub-

sequent to the commencement of the trial, leave to intervene may be granted in the exercise of sound discretion, but is not a matter of right.''

■ The appellant assigns as error the refusal of the circuit court to disqualify Mr. Henderson and Mr. Chadwick as attorneys for the intervenors. He asserts that prior to the filing of the complaint in intervention these attorneys had represented him in this same proceeding and that therefore they should be barred from appearing as attorneys against him. Mr. Chadwick and Mr. Henderson appeared in the suit instituted by Russell W. Duke as attorneys for the International Brotherhood and Charles W. Robison and K. C. Tanner appeared for Tom Ray and the officers of local 72. Mr. Ray did not employ either Mr. Henderson or Mr. Chadwick as his attorney; they did not represent him, or hold themselves out as representing him. There is nothing in the record which justifies in the least appellant's assertion that Mr. Henderson and Mr. Chadwick were, or acted as, his attorneys in the present litigation.

■ Under another assignment of error it is contended by appellant that after his appointment the receiver "was the proper party to bring the action described in the complaint in intervention. The question was first raised by a demurrer to the complaint in intervention and, when it was overruled on the ground that the fact of the appointment of a receiver did not appear from the records in that case, defendant Ray filed an amended answer in which it was alleged that a receiver of local 72 had been appointed on the 17th day of January, 1944, by the circuit court of Multnomah county in *Mursener v. Forte et al.* This amended answer was not filed until the 17th day of May, 1944. The suit in

which the receiver was appointed was not begun until the 22nd day of November, 1943, and in the original complaint therein the plaintiff did not request the appointment of a receiver. At no time was Tom Ray a party to that suit.

The present suit was started on February 3, 1943. Ray was one of the parties defendant, and the question of Ray accounting for the $10,000, and any other money which he had misappropriated, was an issue in this suit long prior to the appointment of the receiver.

At the time of the appointment of the receiver the president of the International Brotherhood was in control of local 72 through Mursener, his representative. One of the principal reasons for the appointment of the receiver was to hold an election to select officers to conduct the business of local 72. The new officers were installed on March 13, 1944, and thereupon, with the approval of the court and the receiver, took charge of the affairs of the association.

The receiver was not authorized, in the order appointing him or in any subsequent order, to institute any action at law or suit in equity, nor was he authorized to intervene in the present suit. No order has ever been made enjoining the further prosecution of this suit by Duke or the intervenors. The continuation of this suit by the plaintiff and intervenors, after the appointment of the receiver, did not interfere with him in the performance of his duties or with property under his control.

In 45 Am. Jur., Receivers, § 433, p. 341, in referring to the right of a corporation to sue in its own name after the appointment of a receiver, it is stated: "Where the appointment of a receiver does not work a dissolution of the corporation, the receivership does not impair its capacity to sue or to enforce judgments

previously obtained. In order to show that the corporation has no capacity to sue, an injunction or restraining order, in addition to the appointment of the receiver, must be shown.'' Judge Gilbert, speaking for the Circuit Court of Appeals, Ninth Circuit, in the case of *United States Fidelity & Guaranty Co. v. Vicars,* 10 F. (2d) 474, 476, said: ''In brief, it seems to be well settled that in order to show that a corporation in the hands of a receiver has no capacity to sue or be sued it must appear that some statutory provision expressly so declares or that an injunction or restraining order so provides in addition to the appointment of a receiver.''

Under the heading ''Abatement and Revival'', 1 Am. Jur. § 50, at page 54, we find this statement: ''There is apparently some conflict of authority as to the effect of the appointment of a receiver for a corporation on the abatement of pending actions by or against the corporation. In general, it may be said that the appointment of a receiver to take charge of the whole or a portion of the property of a corporation for some specific purpose which does not affect the corporate existence does not abate or suspend the prosecution to judgment of actions pending at the time of the appointment.''

All the cases which we have been able to find on this subject have reference to corporations, but we see no valid reason why the same rule should not apply to the right of one or more members of an unincorporated association to prosecute to final conclusion a suit pending at the time of the appointment of a receiver. Undoubtedly the receiver appointed in *Mursener v. Forte et al.* would have been a proper party to this proceeding and upon his application might have been made one, but he was not a necessary party. *United*

*States Fidelity & Guaranty Co. v. Vicars,* supra. Under the facts in this case plaintiff and intervenors were proper parties to prosecute the suit to final determination.

During the month of February, 1943, J. A. Franklin, president of the International Brotherhood, acting under the authority granted to him by the constitution of that organization, suspended the meetings of local 72 and appointed 21 members of the local as a governing board to conduct its business. There is no need here to go into a recital of the facts leading up to this action by Franklin. His authority to suspend the meetings and to appoint this governing board is not questioned. The appointment of the governing board did not bring peace and tranquility to local 72, and on or about the 14th day of October, Franklin withdrew all authority and power previously conferred upon the members of the board and directed and authorized O. W. Mursener to assume full control of the financial and business affairs of local 72.

The "committee of 21", as the members of the governing board were called, however, refused to turn over the affairs and business of local 72 to Mursener. More litigation ensued. On the evening of November 18, 1943, the committee of 21 met at the headquarters of local 72 and purported to pass a resolution which reads in part as follows: "It was moved and seconded that we tender Bro. Ray $10,000 for appreciation of his many years faithful service to Lodge No. 72 and also in consideration of the fact that during the depression, Bro. Ray turned back into the treasury of Lodge No. 72 the money he received for support of a Business Agent." Ray relies upon this resolution as authority for the payment of $10,000 to him out of the funds in the possession of the association. Prior to the

payment of the $10,000, and on October 13, 1943, the president of the International Brotherhood stopped payment on all checks drawn on banks containing the funds of local 72.

Section 1, article IV of the constitution of the International Brotherhood, in referring to the duties of the president of that brotherhood, states in part as follows: ''He shall have the direction and supervision of all Subordinate and District Lodges, with power to suspend their individual members or Lodges, when in his judgment it is for the best interest of our International Brotherhood.'' It was under the authority so granted to Franklin that he, in the first instance, appointed the members of the governing board. They were not appointed for any definite time. It was under this same provision of the constitution that Franklin, on or about October 14, 1943, removed the members of the governing board and appointed Mursener to take over and direct the affairs of the local association. The authority which Franklin had to appoint the members of this governing board carried with it the power to remove them. *Morris v. Parks et al.,* 145 Or. 481, 485, 28 P. (2d) 215; *State ex rel. Lopas v. Shagren et al.,* 91 Wash. 48, 157 P. 31; *Irving v. Ferguson,* 118 Wash. 37, 202 P. 269; *Hanchett et al. v. Burbidge et al.,* 59 Utah 127, 202 P. 377.

■ After their removal by Franklin, the members of the governing board had no authority whatsoever to pay or authorize the payment to Ray of the $10,000, or any part thereof, here involved. It was not paid to him for services rendered or to be rendered in the future. It was a pure gratuity and unauthorized.

The decree appealed from should be affirmed and it is so ordered.