Argued and submitted October 10, affirmed December 19, 1984, reconsideration
denied February 8, petition for review denied April 30, 1985 (299 Or 118)

### SAMUELS,
*Respondent,*

*v.*

### HUBBARD,
*Defendant,*

*and*

### CHURCH OF SCIENTOLOGY OF
### CALIFORNIA, INC. et al,
*Intervenors-Appellants.*

### (A8311-07227; CA A30844)

692 P2d 700

Marc D. Blackman, Portland, and Eric M. Lieberman, New York, New York, argued the cause for intervenors-appellants. On the briefs were Marc D. Blackman, Diane L. Alessi, and Ransom, Blackman & Simson, Portland.

Garry P. McMurry, Portland, argued the cause for respondent. With him on the brief were Ronald L. Wade, and Rankin, McMurry, VavRosky & Doherty, Portland.

Before Richardson, Presiding Judge, and Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Plaintiff filed this civil action against Hubbard, the founder of Scientology, alleging that Hubbard had committed torts against him. Plaintiff does not allege that Hubbard personally committed the alleged torts, which include conversion, outrageous conduct, defamation and fraud. Rather, he alleges that he directed and controlled others who did so and that they were Hubbard's agents. They include intervenors Church of Scientology of California, Inc., and Church of Scientology, Mission of Davis. Plaintiff is a former minister of the California church and a former president of the Davis mission. Plaintiff served Hubbard by substituted service pursuant to an *ex parte* court order, but Hubbard has not appeared. After the service, the California church and the Davis mission moved to intervene as defendants. The trial court denied their motions, and they appeal. We affirm.

Plaintiff moves to dismiss on the ground that an order denying a motion to intervene is not appealable. ORS 19.010(2)(a) provides that appealable orders include "[a]n order affecting a substantial right, and *which in effect determines the action or suit so as to prevent a judgment or decree therein.*" (Emphasis supplied.) Other states with similar appeal statutes have held that an order denying intervention is final as to the party seeking to intervene, because it prohibits a judgment in the main action on that party's claim. They therefore treat such orders as immediately appealable. *Henry v. Travelers' Ins. Co.,* 16 Colo 179, 26 P 318 (1891); *Ousley v. Osage City,* 95 Kan 254, 147 P 1110 (1915); *Likover v. Cleveland,* 60 Ohio App 2d 154, 396 NE 2d 491 (1978); *James S. Jackson Co. v. Horseshoe Creek Ltd.,* 650 P2d 281 (Wyo 1982); *see also Thorpe v. North Moneta, etc. Water Co.,* 12 Cal App 187, 106 P 1106 (1909) (intervenor could not appeal from final judgment in the case; the time for an appeal was when petition to intervene was denied).

Federal courts take a slightly different position. 28 USC § 1291 provides for appeals "from all final decisions" of the district courts. Final decisions generally include orders that, as a practical matter, end the litigation. *Catlin v. United States,* 324 US 229, 233, 65 S Ct 631, 89 L Ed 911 (1945); *Weston v. The City Council of Charleston,* 27 US (2 Pet.) 449, 464-65, 7 L Ed 481 (1829); *Matter of Glover, Inc.,* 697 F2d 907,

909 (10th Cir 1983). An order denying a petition to intervene is appealable under the federal statute if the petitioner had a right to intervene or if the denial was an abuse of the trial court's discretion. If the decision was discretionary and the trial court did not abuse its discretion, federal courts take either of two positions. The traditional approach is to dismiss the appeal. *Wheeler v. American Home Products Corp.,* 582 F2d 891, 896 (5th Cir 1977); *State of N.M. v. Aamodt,* 537 F2d 1102, 1106 (10th Cir 1976), *cert den* 429 US 1121 (1977). However, deciding whether to dismiss the appeal requires the appellate court to determine the merits of the trial court's denial of intervention, just as it would do if it had jurisdiction. Some commentators and other federal courts have suggested that it is simpler to treat all denials of intervention as appealable and to affirm those where the trial court properly exercised its discretion. *Reedsburg Bank v. Apollo,* 508 F2d 995, 997 (7th Cir 1975); *Levin v. Ruby Trading Corp.,* 333 F2d 592, 594 (2nd Cir 1964); 3B Moore's Federal Practice ¶24.15. State courts whose appeal provisions are similar to the federal generally take this latter position. *Citibank, N.A., v. Blackhawk Heating, Etc.,* 398 So 2d 984, 986 (Fla App 1981); *Mayflower Development Corp. v. Dennis,* 11 Mass App 630, 633-35, 418 NE 2d 349 (1981); *Apodaca v. Town of Tome Land Grant,* 86 NM 132, 520 P2d 552 (1974).

In short, in most other jurisdictions, either some or all denials of intervention are immediately appealable. If not all denials are immediately appealable, the court must first decide the merits of the denial in order to determine whether a particular order is appealable. Oregon has not yet clearly decided the issue. In *State Highway Com. v. Superbilt Mfg. Co.,* 200 Or 478, 481-83, 266 P2d 1072 (1954), the Supreme Court noted that a denial of intervention of right may be final and therefore appealable. However, the intervention at issue was premature, and denial of the motion to intervene was without prejudice to a renewed motion later in the case. The court, therefore, dismissed the appeal. In *General Const. v. Fish Comm.,* 19 Or App 485, 490-92, 528 P2d 122 (1974), we dismissed an appeal from a denial of a motion to intervene on the ground that the intervenor could assert its claim in a separate action. In *Brown v. Brown/Brown,* 10 Or App 80, 82-83, 497 P2d 671, *rev den* (1972), we dismissed an appeal because the trial court did not abuse its discretion in denying

the motion to intervene. These cases can best be seen as applications of the majority federal rule that, when the decision on intervention is within the trial court's discretion and the trial court did not abuse its discretion, the appellate court should dismiss the appeal. In each case the court determined the merits of the appeal in order to dismiss it; the *Superbilt* court indicated that it would not have dismissed the appeal if it had been meritorious.

■ Although Oregon cases may apply the majority federal rule, they do not constitute a reasoned adoption of it. Other states have held, and we agree, that a decision to deny a motion to intervene affects a substantial right of the intervenor and, as a practical matter, determines the action so as to prevent a judgment in that action on the intervenor's claim or defense. It, therefore, comes within the language of ORS 19.010(2)(a). We also agree with those courts which hold that it makes little sense to distinguish procedurally between motions for intervention which are properly or improperly denied. We must address the merits of the trial court's decision in either situation, and it is less confusing simply to affirm a denial that was within the court's discretion. We deny plaintiff's motion to dismiss the appeal.

ORCP 33 provides, in relevant part:

"**B.** At any time before trial, any person shall be permitted to intervene in an action when a statute of this state, these rules, or the common law, confers an unconditional right to intervene.

"**C.** At any time before trial, any person who has an interest in the matter in litigation may, by leave of court, intervene. In exercising its discretion, the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

ORCP 33 is the first clear recognition in Oregon of a distinction between intervention of right and permissive intervention. Some cases considering intervention under *former* ORS 13.130 (*repealed by* Or Laws 1979, ch 284, § 199) suggested that a party that met the requirements of that statute had a right to intervene. *See Barendrecht v. Clark,* 244 Or 524, 528, 419 P2d 603 (1966); *Duke v. Franklin,* 177 Or 297, 304-05, 162 P2d 141 (1945). The present rule, however, clearly limits intervention of right to the few circumstances described in

ORCP 33B. We review decisions on motions based on those circumstances as matters of law. Other motions for intervention must meet the requirements of ORCP 33C and, even if they do, the trial court has discretion whether to grant them. We review these latter decisions only to determine whether they are within the court's discretion. Intervenors assert both that they have a right to intervene under ORCP 33B and that they are permissive intervenors under ORCP 33C.

The underlying assumption of many of intervenor's arguments is that a default judgment against Hubbard would seriously prejudice them.[1] We do not agree. Plaintiff's complaint alleges that Hubbard, through intervenors and other of his agents, committed a number of torts. A judgment against him would be conclusive between plaintiff and Hubbard, but it would not bind intervenors. If, as they insist, they are independent entities over whom Hubbard has influence only as the founder of their faith, the effect of a judgment would at best be indirect and speculative. None of the allegations proved against Hubbard would be deemed proved against intervenors. They would remain free to deny that they are his agents or that he controls them. Plaintiff could not use the judgment to hold intervenors liable in another case.

Plaintiff may try to satisfy a judgment against Hubbard by executing on intervenors' property. To do so successfully, he would have to prove that some property that intervenors hold is in fact Hubbard's property. That would require a full trial of those issues, and the judgment would not aid plaintiff in that regard. He may attempt to reach intervenors' property by showing that Hubbard so dominates intervenors that they are his alter-egos. If he succeeds, not only would intervenors' property be Hubbard's property, but intervenors would have no interest in this proceeding different from Hubbard's, because they would have no existence separate from Hubbard's. In those circumstances, it would not be inappropriate to bind them to the result of plaintiff's action against Hubbard.

If plaintiff cannot show that Hubbard dominates intervenors, plaintiff will be unable to use a judgment against

---

[1] Intervenors assert that Hubbard will not appear. The record shows only that he has not yet appeared.

Hubbard to acquire their property. Plaintiff may also try to show that Hubbard, although he does not control intervenors, has an interest in their property. If so, plaintiff could reach that retained interest to satisfy a judgment against Hubbard. Such an action would not harm intervenors, because the interest plaintiff receives would not be theirs in the first place. They would be in the same position as any other garnishee. Thus, intervenors have not shown direct prejudice to themselves from a judgment against Hubbard.[2]

■ We turn to the specific bases on which intervenors claim the court erred in denying their motions to intervene. They first assert that they are entitled to intervene as of right under ORCP 33B because they are persons to be joined, if feasible, under ORCP 29A.[3] We need not decide whether a person who should be joined under ORCP 29A is also entitled to intervene as of right under ORCP 33B, because intervenors are not persons who must be joined. Their presence is not necessary for complete relief between plaintiff and Hubbard. To the extent that the issues relate to intervenors' activities, plaintiff and Hubbard may need their evidence, but that evidence is available without joining them as parties. There is no danger that intervenors, plaintiff or Hubbard would be exposed to a substantial risk of double liability or inconsistent obligations as a result of proceedings in intervenors' absence. Neither is this a case in which intervenors would be bound by challenged rules or would be deprived of money from a challenged fund if plaintiff's action is successful. *See New York Pub. I.R.G., Inc., v. Regents of Univ. of St. of N.Y.*, 516 F2d 350 (2nd Cir 1975); *Decker v. United States Dept. of Labor*, 473 F Supp 770 (ED Wis 1979), *aff'd* 661 F2d 598 (7th Cir 1980). Therefore, intervenors are not entitled to intervene as

---

[2] If Hubbard appears and obtains a judgment in his favor, intervenors would benefit because of the judgment's collateral estoppel effects. *See Bahler v. Fletcher*, 257 Or 1, 474 P2d 329 (1970).

[3] ORCP 29A provides in part:

"A person who is subject to service of process shall be joined as a party in the action if (1) in that person's absence complete relief cannot be accorded among those already parties, or (2) that person claims an interest relating to the subject of the action and is so situated that the disposition in that person's absence may (a) as a practical matter impair or impede the person's ability to protect that interest or (b) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of their claimed interest."

of right under ORCP 33B.

◼      Intervenors' other arguments in support of intervention are in fact for permissive intervention, although they label some of them as seeking intervention as of right. They assert that the adoption of ORCP 33C expanded the bases for permissive intervention in Oregon from what they were under *former* ORS 13.130.[4] They are incorrect. The first sentence of ORCP 33C is simply a repetition of the standard for intervention found in *former* ORS 13.130. Although the second sentence of ORCP 33C is derived from FRCP 24(b), it merely states criteria that courts have traditionally used in deciding whether to permit intervention. It does not adopt the broad federal standard for permissive intervention.[5]

◼      Intervenors assert that disposition of the case in their absence may, as a practical matter, impede their ability to protect their religious and reputational interests. Assuming that those concerns give intervenors an "interest in the matter in litigation," they are not significant enough that the trial court's action was outside its discretion. Although there may be extensive litigation between various Scientology organizations and their opponents, we do not see how the exclusion of intervenors from this case would damage their interests in others. There would be no *res judicata* as to them. Despite their arguments to the contrary, there would also be no *stare decisis* effect. The effect of a judgment against Hubbard on intervenors' reputation is highly speculative.

Intervenors allege that the actions of which plaintiff complains, to the extent that they occurred at all, were part of

---

[4] Those bases were strict. "[T]he right or interest which will allow a third person to intervene must be of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation of the judgment[.]" *Brune v. McDonald*, 158 Or 364, 370, 75 P2d 10 (1938).

[5] FRCP 24(b)(2) permits intervention whenever the intervenor's claim or defense and the main action have an issue of law or fact in common. The bases for permissive intervention in ORCP 33C, rather than being comparable to those in FRCP 24(b)(2), are closer to those for intervention of right in FRCP 24(a)(2). The numerous federal cases which intervenors cite are therefore of limited assistance in resolving this case. Even those federal cases which hold that a party had a right to intervene do little more than indicate that a similarly situated party would qualify for permissive intervention under Oregon law. That determination is of little assistance in deciding whether a denial of permissive intervention exceeded the trial court's discretion. Intervenors would have been better advised to seek authorities applying intervention provisions similar to Oregon's rather than assuming that there is a federal answer for every state problem.

intra-church religious discipline and that the secular authorities may not interfere with that discipline. A judgment against Hubbard in this case neither decides this point nor impairs intervenors' ability to raise it in another proceeding. Plaintiff's complaint alleges a number of intentional torts. It does not by its terms implicate intervenors' ecclesiastical concerns. Those concerns are matters of defense. If Hubbard does not control intervenors, his failure to raise these defenses cannot affect intervenors. If intervenors are his alter-egos, it is not improper for them to bear the results of his decision not to appear (if he does not) or not to raise those issues (if he does not).[6] To the degree that intervenors are in fact separate entities from Hubbard, failure to join them would not as a practical matter affect their ability to protect their separate interests.[7]

Intervenors' strongest argument is that their position as Hubbard's indemnitors makes intervention necessary. The indemnity obligation arises from contracts between intervenors and the Church of Scientology International and Scientology Missions International. Under those contracts intervenors must indemnify Hubbard from all claims against him which arise from their practice of Scientology. The contracts were executed in July and September, 1982, after many of the events of which plaintiff complains had occurred. However, each claim for relief refers to events in October, 1982, or later, so we will assume that intervenors may be required to indemnify Hubbard for at least some of plaintiff's alleged damages. The indemnity agreements give intervenors a sufficient interest in the matter in litigation that the court would not have erred by permitting them to intervene. *See Barendrecht v. Clark, supra.* Whether the court's denial of intervention was beyond its discretion depends on whether intervenors would be prejudiced in defending against Hubbard's demand for indemnity if they are not allowed to intervene. If they would not, the court's action was permissible.

---

[6] As we discuss below, intervenors as Hubbard's indemnitors may be able to insist that he raise those defenses.

[7] Intervenors' assertion that certain property which plaintiff alleges Hubbard converted actually belonged to them does not meet the requirements of ORCP 33C. Plaintiff seeks damages for conversion, not replevin of the property, and therefore intervenors do not have an interest in the subject matter of that claim.

If intervenors are not permitted to intervene, Hubbard may refuse to defend the case or may do so inadequately. Intervenors express particular concern that he may not raise their ecclesiastical defenses. However, under California law, which governs the interpretation of the agreements according to their express terms, intervenors can control Hubbard's defense to the extent that the issues involve their indemnity liability. If they do not, they will have a defense to any indemnity claim Hubbard may bring against them. Cal Civ Code § 2778 provides in relevant part:

> "In the interpretation of a contract of indemnity, the following rules are to be applied, unless a contrary intention appears:
>
> "* * * * *
>
> "6.  If the person indemnifying, whether he is a principal or a surety in the agreement, has no reasonable notice of the action or proceeding against the person indemnified, or is not allowed to control its defense, judgment against the latter is only presumptive evidence against the former;
>
> "7.  A stipulation that a judgment against the person indemnified shall be conclusive upon the person indemnifying, is inapplicable if he had a good defense upon the merits, which by want of ordinary care he failed to establish in the action."

Subsection 7 apparently applies to all situations in which an indemnitee may claim that a judgment is conclusive. *See Nicholson-Brown, Inc. v. City of San Jose,* 62 Cal App 3d 526, 133 Cal Rptr 159 (1976). California courts have gone beyond the statute to hold that an action against an indemnitee is in substance an action against the indemnitor. The indemnitor, they hold, is the real party in interest and has an opportunity in defending the indemnitee to make any defense which may exist. *Dutil v. Pacheco,* 21 Cal 438 (1863); *Sunlight Elec. Supply Co. v. McKee,* 226 Cal App 2d 47, 37 Cal Rptr 782 (1964); *see also* 14 Cal Jur 3d 734-38, Contribution and Indemnification §§ 70-71; Restatement (Second) Judgments, § 57(1)(b)(ii).

If Hubbard appears in this case, intervenors on his behalf may raise all the defenses that they could raise if they were parties. If he does not appear and does not permit intervenors to appear for him, they may have a defense to his

indemnification claim. Although the trial court could have allowed intervention, its refusal to do so does not so damage intervenors that it was an abuse of the court's discretion.

Affirmed.