**Michael J. FLYNN, Plaintiff, Appellee,**

v.

**Lafayette Ronald HUBBARD a/k/a L. Ron Hubbard, Defendant, Appellee.**

**CHURCH OF SCIENTOLOGY OF CALIFORNIA, INC., Appeal of**

**Michael J. FLYNN, Plaintiff, Appellee,**

v.

**Lafayette Ronald HUBBARD a/k/a L. Ron Hubbard, Defendant, Appellee.**

**Mary Sue HUBBARD, Appeal of**

**Nos. 85–1397, 85–1398.**

United States Court of Appeals, First Circuit.

Argued Oct. 7, 1985.

Decided Feb. 7, 1986.

land, Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P.C., New York City, Roger Geller and Geller & Weinberg, Boston, Mass., were on brief for appellant Church of Scientology of California, Inc.

Michael Lee Hertzberg, New York City with whom Roger Geller, and Geller & Weinberg, Boston, Mass., were on brief for appellant Mary Sue Hubbard.

Michael A. Tabb, Boston, Mass., with whom Flynn & Joyce, David M. Bansah, and Hollingsworth & Associates, Boston, Mass., were on brief for appellee.

Before COFFIN, Circuit Judge, TIMBERS,* Senior Circuit Judge, and BOWNES, Circuit Judge.

BOWNES, Circuit Judge.

The question in this case is whether intervention under Federal Rule of Civil Procedure 24(a)(2) or 24(b)(2) was properly denied where the sole named defendant has, as yet, failed to appear. The plaintiff-appellee, Michael J. Flynn, is a Massachusetts attorney who has sued various Churches of Scientology and individual Scientologists over a number of years. L. Ron Hubbard, the defendant, is the founder of Scientology. On September 7, 1983, Flynn brought the complaint in this case naming Hubbard as the sole defendant and alleging that Hubbard had caused a wide range of torts to be committed against him.

The complaint alleges a written conspiracy by Hubbard and his individual and organizational agents and employees "to destroy" Flynn. This conspiracy was carried out, it is alleged, by various named Scientology organizations and individuals over which Hubbard has absolute authority. The torts alleged to have been committed at Hubbard's direction are: malicious abuse of process; malicious prosecution; intentional infliction of emotional distress; trespass; conversion; interference with contractual rights; invasion of privacy; unfair or deceptive practices in violation of Mass.Gen.Laws Ann. ch. 93A; assault and

Leonard B. Boudin, New York City with whom Eric M. Lieberman, Edward Cope-

* Of the Second Circuit, sitting by designation.

battery; and violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–68. There are no allegations in the complaint that Hubbard, acting by himself, committed any torts against Flynn; all torts it is alleged were committed by Hubbard's agents and/or employees.

The putative intervenors are the Church of Scientology of California (CSC) and Mary Sue Hubbard, wife of the defendant. Both are named in the complaint as coconspirators. In addition to filing motions to intervene, CSC and Mary Sue Hubbard filed answers to the complaint. Mary Sue Hubbard also filed a counterclaim for malicious prosecution, abuse of process and libel. We note in passing that the tone, tenor, and language of the voluminous pleadings, affidavits and exhibits filed in this case (over 1,500 pages) is, at times, so accusatory, emotional and vitriolic as to make the reading of them a decidedly unpleasant chore.

CSC identified four "interests" that would be impaired or impeded unless intervention was allowed:

1. an interest in preventing its own actions, many of which it claims are protected under the first amendment or state law, from serving as a predicate for a judgment against the founder of the church and its spiritual leader;

2. an interest in defending both its own reputation and that of its revered founder;

3. an economic interest based on its fear that plaintiff will attempt to enforce any judgment by levying on church property;

4. an interest in preventing plaintiff from making offensive collateral estoppel use of a default judgment in the present action in other litigation now pending elsewhere against the church.

We note that all of these interests are based on the assumption that the defendant will not appear and there will be a default judgment against him.

Mrs. Hubbard asserted two interests that would be impaired unless she could intervene:

1. an economic interest based on the claim that she is wholly dependent on the defendant for her support and that a depletion or diminution of his assets will have an adverse effect on her and deprive her of her inheritance;

2. an interest in protecting her reputation which she claims is impugned by the allegations in the complaint.

Her interests, as with those of CSC, are based on the assumption that defendant will not appear and there will be a default judgment.

After a lengthy hearing on April 15, 1985, the district court, on April 22, 1985, denied the motions to intervene. No written opinion stating the reasons for the decision issued. Plaintiff's motion for substituted service on defendant was granted on May 31, 1985, and service was made accordingly.

■■ In this circuit, an immediate appeal lies from the denial of a motion to intervene under Rule 24(a)(2). *Kartell v. Blue Shield of Massachusetts, Inc.*, 687 F.2d 543, 548 (1st Cir.1982). The parameters of appellate review are, however, not so clear. We have held that "[t]he district court is to exercise its discretion in determining timeliness, and its ruling will not be disturbed on review unless there is an abuse of discretion." *Chase Manhattan Bank v. Corporacion Hotelera de Puerto Rico*, 516 F.2d 1047, 1049 (1st Cir.1975). The Second Circuit has applied the abuse of discretion standard to all 24(a)(2) findings because of "the great variety of factual circumstances in which intervention motions must be decided." *United States v. Hooker Chemicals & Plastics Corp.*, 749 F.2d 968, 991 (2d Cir.1984). But here, we are faced with a question of law: Can intervention be granted when the only defendant in the case has not appeared. This means that the standard of review is whether the court committed legal error in denying intervention.

Both putative intervenors make it clear that it is the failure of defendant to appear that has prompted their motions to intervene. They argue that Hubbard will not appear, a default judgment will be entered against him and they will be irreparably harmed if they cannot intervene. In her counterclaim, Mary Sue Hubbard states: "8. Scientology Founder L. Ron Hubbard went into seclusion in approximately March, 1980, and has not been seen by his family, or by any Church office, since that date." Plaintiff, on the other hand, asserts that Hubbard will appear to prevent a default judgment.

We are in no position to determine whether Hubbard will or will not appear. We do know, however, that failure of a defendant to appear is a unique reason for intervention. We have been unable to find any federal cases in which intervention has been allowed or denied under Rule 24 because the defendant has failed to appear. This does not, of course, automatically preclude intervention; it does mean, however, that we must examine the law carefully to determine if intervention is warranted.

Federal Rule of Civil Procedure 24(a)(2) provides:

> **(a) Intervention of Right.** Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

There is nothing in the Notes of The Advisory Committee on Rules adverting to intervention when the defendant has failed to appear. The wording of the rule itself suggests that it may only apply when the named defendant has appeared and is protecting his or her interests. The last phrase, particularly, referring to "existing parties" suggests a case cast in the traditional mold with a viable dispute between plaintiff and defendant.

■ We now turn to the case law to determine whether intervention should be permitted when the sole defendant has by deliberate choice failed to appear.[1] The seminal case on the scope and meaning of Rule 24 is *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 87 S.Ct. 932, 17 L.Ed.2d 814 (1967). In that case, the Court reversed the district court's denial of intervention in a divestiture suit arising from violations of § 7 of the Clayton Act. The Court explored the differences between the present rule and its predecessor. It held that intervention should be granted because Rule 24(a)(2) "recognizes as a proper element in intervention 'an interest' in the 'transaction which is the subject of the action,'" *id* at 135, 87 S.Ct. at 936, and because the existing parties "have fallen far short of representing ... [the intervenor's] interests." *Id.* at 136, 87 S.Ct. at 937. Giving *Cascade* the broadest possible reading, we do not think it affords any basis for the proposition that if an individual has an interest in a case, as defined by the rule, he or she can intervene absent a defendant. The Court gave two reasons for allowing intervention, "an interest in the transaction" and the failure of the "existing parties" to represent the intervenor's interests. Here, Hubbard has not appeared to date; until or unless he does, it cannot be determined whether he will or can represent adequately the interests of the putative intervenors.

*Donaldson v. United States*, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971), also focused on the scope and meaning of Rule 24(a)(2). Donaldson's income tax returns were under investigation by the Internal Revenue Service. A special agent of the IRS served summonses on the former corporate employer of Donaldson and its

---

1. No suggestion has been made that defendant's physical or mental condition has prevented his appearance. We take judicial notice that a science fiction book by him, The Invaders Plan, was published after oral argument and received a favorable review in the Sunday Book Review section of the New York Times.

accountant ordering them to testify and produce records pertaining to Donaldson. Shortly prior to the issuance of the summonses, the United States District Court, acting on petitions filed by Donaldson, issued temporary restraining orders and then a preliminary injunction restraining the corporation and its accountant from complying with the summons until the court acted. The government and the IRS agent filed petitions in the same district court for judicial enforcement of the summonses. *Id.* at 518–20, 91 S.Ct. at 536–37. After a show cause order issued, Donaldson sought to intervene in the enforcement proceedings pursuant to Rule 24(a)(2). The district court denied the motion to intervene and ordered that the summonses be enforced. *Id.* at 521–22, 91 S.Ct. at 537–38. The Court held that a taxpayer may not intervene of right "simply because it is his tax liability that is the subject of the summons." *Id.* at 530, 91 S.Ct. at 542. After considering Donaldson's particular situation, the Court concluded that he did not have an interest in the enforcement proceedings within the meaning of Rule 24(a)(2). *Id.* at 531, 91 S.Ct. at 542. Neither the holding nor reasoning of *Donaldson* is of help to the putative intervenors here.

Mrs. Hubbard relies on *SEC v. Flight Transportation Corp.*, 699 F.2d 943 (8th Cir.1983), as authority for her right to intervene based on her economic interest in the assets of her husband. In that case, the SEC commenced an action against Flight Transportation Corp., two subsidiary corporations, and William Rubin, President and Chairman of the Board of Directors and Chief Executive Officer of the three corporations. Shortly thereafter, a class action by Flight Transportation's securities holders was commenced. This was followed by an involuntary bankruptcy petition against Flight Transportation. A stay of the bankruptcy proceedings and all proceedings in any state or federal court against the corporations and William Rubin was ordered. Joyce Rubin, wife of William, had filed a state action for divorce. She moved to intervene and for a modifica-

tion of the stay order so that her divorce action could proceed. The district court denied her motion to intervene. The court of appeals reversed. It held that "Joyce Rubin may be unable, as a practical matter, to protect her interests if she cannot intervene" and that "the existing parties cannot be expected to represent Joyce Rubin's interests adequately." *Id.* at 949. William Rubin was at all times one of the defendants.

That case may be good authority for the proposition that a wife who has instituted a divorce action has a right to intervene to protect her economic marital interests in a SEC action with bankruptcy overtones against her husband and his corporations. It has no bearing, however, on a tort action like this, where the husband has failed to appear.

As already noted, we have found no federal cases allowing or denying intervention where the defendant has failed to appear. There is, however, one state case directly on point. Not surprisingly, the defendant is the same person as in the case before us, L. Ron Hubbard. In *Samuels v. Hubbard*, 71 Or.App. 481, 692 P.2d 700 (1984), the court held that the Church of Scientology of California, Inc., and Church of Scientology, Mission of Davis, had no right, under Oregon law, to intervene as of right in a tort action against Hubbard. As here, the plaintiff in the Oregon case alleged that Hubbard directed and controlled others to commit torts against him. The torts alleged are similar to the ones alleged here: conversion, outrageous conduct, defamation and fraud. And, as here, defendant failed to appear and the putative intervenors asserted that he would not appear. The Oregon court was careful to point out: "The record shows only that he [Hubbard] has not yet appeared." 692 P.2d at 703 n. 1.

■ What CSC and Mrs. Hubbard really seek here is not intervention, but to be substituted as defendants for the defendant plaintiff chose to sue. There can be no question that plaintiff has stated a cause of

action against the defendant. Plaintiff could have sued both CSC and Mrs. Hubbard but deliberately decided not to do so. If we were to allow intervention, despite defendant's failure to appear, we would be forcing our choice of defendants on plaintiff. We see no reason why, in a tort action, the plaintiff's choice of defendant should be nullified by substituting under the guise of intervention different joint tort-feasors than the one against whom the suit was brought. Under Federal Rule of Civil Procedure 19, the companion to Rule 24, joint tort-feasors need not be joined since each is liable for the entire amount of the recovery. *State of Maine v. United States Department of Labor,* 669 F.2d 827, 832 (1st Cir.1982); 7 C. Wright & A. Miller, Federal Practice and Procedure § 1623 at 241 (1972). The same reasoning applies to intervention under Rule 24(a)(2).

■ It would be premature to decide now whether the interests asserted by CSC and Mrs. Hubbard meet the requirements of Rule 24. Although we disagree with both intervenors as to the effect of a default judgment on them,[2] it is the defendant's willful action in failing to appear that has subjected them to whatever risks such a judgment may pose. There is and can be no suggestion that this is a collusive suit between plaintiff and defendant in an attempt to somehow indirectly impose liability on CSC and Mrs. Hubbard. Plaintiff has made defendant the sole target of his action. Whatever carom effect may occur is the direct result of defendant's failure to appear. We hold that because the sole defendant has chosen not to appear in this tort action, there can be no intervention by the joint tort-feasors under Rule 24(a)(2) until and unless the defendant appears.

■ Intervention is also sought under Rule 24(b)(2). This allows intervention "when an applicant's claim or defense and the main action have a question of law or fact in common." The rule further states: "In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Our opinion makes it clear that the district court did not abuse its discretion in denying permissive intervention.

*Affirmed.* Costs to appellee.

COFFIN, Circuit Judge, (concurring).

I believe the court misapplies Federal Rule of Civil Procedure 24(a)(2) in finding that intervention should not be granted when the only defendant in the case has not appeared. The court holds that the rule can only be applied to cases involving parties actually arguing in court because the rule refers to "existing parties". The phrase "existing parties" appears in the rule's third requirement: a party who satisfies the rule's first two requirements [1] shall be permitted to intervene "unless the applicant's interest is adequately represented by existing parties". My brothers claim that this requirement can be satisfied only when the named defendant "has appeared and is protecting his or her own interests". Until that time, they believe "it cannot be determined whether he will or can represent adequately the interests of the putative intervenors".

I believe this unique interpretation of Rule 24(a)(2) is unsupported by, and is contrary to, the language of the rule, the rule's purpose, and the relevant case law. But I concur in the judgment of the court because I find that appellants fail to meet the rule's interest and impairment requirements.

I

The reading of "existing parties" as referring solely to named parties who actual-

---

**2.** It is black letter law that those not a party to an action are not bound by an adverse judgment against the named defendant.

**1.** Under the first requirement (the interest requirement), the applicant must claim an interest relating to the property or the transaction that is the subject of the action. The second requirement (the impairment requirement) is that the applicant must show that he or she is so situated that the disposition of the action may as a practical matter impair or impede his or her ability to protect that interest.

ly appear in court and protect their own interests does not follow from the language of the rule. I think that the reasonable reading of "existing" is that it modifies "parties" to distinguish such from parties not formally in the litigation; that is, "existing parties" refers to the actual parties named in a litigation, as opposed to the nonparties seeking to intervene. *See, e.g., Arkansas Power & Light Company v. Arkansas Public Service Commission,* 107 F.R.D. 335, 340 (E.D.Ark.1985) (interests asserted by would-be intervenors are "adequately protected by *those that are already parties to this litigation*") (emphasis added). *See also Woolworth v. Miscellaneous Warehouseman's Union,* 629 F.2d 1204, 1213 (7th Cir.1980).

The court's reading also fails to reconcile its interpretation with the purpose behind the intervention rule. Rule 24(a)(2) is designed to allow participation in a litigation by nonparties whose interests may be impaired.[2] To avoid judicial inefficiency, however, the rule contains an adequacy of representation requirement, which precludes intervention when a nonparty's interests are already adequately represented by an existing party.[3] Because this requirement may preclude parties from intervening even when they have protectible interests, applicants need only make a minimal showing of inadequate representation. *Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686 (1972). Intervention will be granted, if the other conditions are satisfied, unless the court is persuaded that the representation of the nonparty is in fact adequate. Wright & Miller, *Federal Practice and Procedure* 519.[4] If the applicant

shows that the representation *may be* inadequate, *see Trbovich,* 404 U.S. at 538 n. 10, 92 S.Ct. at 636 n. 10, then the court is precluded from finding that the interest is adequately represented. *Note,* Duke L.J. 117, 129 (1968).

The court's decision to exclude from this rule's scope cases in which the named defendant has chosen not to appear runs counter to the goal of protecting those who are not otherwise represented. Indeed, if the other conditions are satisfied, this type of situation presents the clearest need for permitting intervention because the nonparties' interests will not be represented at all. Wright & Miller, *supra,* at 524. "An interest that is not represented is surely not adequately represented and intervention must be allowed." *Id.*

A denial of intervention might be justifiable if the named defendant was likely to appear and might then adequately represent the interests of the nonparty. That is neither my colleagues' position nor the posture of this case. Here, the record supports appellants' assertion that Hubbard will not appear, and it is that very fact on which the court bases its denial of intervention. Yet it provides no justification for declining to decide whether the lack of representation here constitutes "inadequate representation".

The court interprets the rule to apply only to "cases cast in the traditional mold with a viable dispute between plaintiff and defendant". Regardless of whether this type of litigation is traditional, it will adjudicate rights and may impair interests of nonparties. The court would apply Rule 24(a)(2) if the defendant appeared in court

---

2. *See e.g.,* Hilliker, *Rule 24: Effective Intervention,* 7 Litigation 21, 21 (1981); Shapiro, *Some Thoughts on Intervention Before Courts, Agencies, and Arbitrators,* 81 Harv.L.Rev. 721, 726–27 (1968).

3. *See e.g.,* Brunet, *A Study in the Allocation of Scarce Judicial Resources: The Efficiency of Federal Intervention Criteria,* 12 Ga.L.Rev. 701, 733 (1978).

4. Under the former Rule 24(a)(2), one of the two conditions of intervention was a showing

by the applicant that his representation by the existing parties "is or may be inadequate". This language was revised in 1966 so that if the other conditions of the rule are satisfied, intervention is of right "unless the applicant's interest is adequately represented by existing parties". Wright & Miller, *supra,* at 519. "It seems entirely clear that the effect of this change is to shift the burden of persuasion." *Id.; See also SEC v. Dresser Industries,* 628 F.2d 1368, 1390 (D.C. 1980); Shapiro, *supra,* at 741 n. 91.

and defended merely by asserting that the plaintiff's charges were false, but would not apply it if the defendant stopped short of taking this small step. I fail to see any justification for creating such a formalistic distinction, not required by the rule, when the interests of nonparties may be equally impaired in either situation.[5]

My brothers suggest that their position finds support from the only court, federal or state, that has addressed intervention in this type of case. In *Samuels v. Hubbard*, 71 Or.App. 481, 692 P.2d 700 (1984), the Oregon Court of Appeals denied intervention as of right to CSC and others in a tort action against Hubbard. I disagree with my brothers' suggestion for two reasons. First, the court interpreted a state intervention rule, somewhat stricter than Rule 24(a)(2). *Id.* at 704 & n. 5. According to the state court, a party entitled to intervene as of right under the federal rules might only qualify for "permissive intervention under Oregon law". *Id.* at 704 n. 5. Second, the court did not find the intervention rule inapplicable to a situation where the sole named defendant chooses not to appear, but denied intervention on the ground that any interests the applicants had in the litigation would not be impaired by a judgment against Hubbard. In a footnote, the state court observed that the record did not seem to support the applicants' assertion that Hubbard would not appear.[6] My brethren infer from that statement that the state court denied intervention because Hubbard did not appear. To the contrary, the state court determined that even if there was "inadequate representation", either because Hubbard would not appear or would appear and inadequately defend applicants' interests, those interests were insufficient to require intervention. *Id.* at 705–06.

Federal courts faced with a somewhat similar situation have not taken the approach adopted by the court. These courts have addressed the situation where the named party appears at trial, loses, and chooses not to bring an appeal. An applicant has then sought to intervene for purposes of bringing the appeal. Courts have routinely found that Rule 24(a)(2) applies to this situation, even though the named defendant has not "appeared" for purposes of the appeal and has not "protect(ed) his or her interests". Moreover, these courts have found that the nonparty has satisfied the inadequacy of representation requirement because there will be *no* representation by the existing party. *See, e.g., United States v. American Telephone and Telegraph Co.*, 642 F.2d 1285, 1293 (D.C. Cir.1980) (MCI was not adequately represented by the United States in the decision not to appeal); *County of Fresno v. Andrus*, 622 F.2d 436, 439 (9th Cir.1980) (unwillingness to take appeal indicates that existing party does not represent would-be intervenor fully).

For example, in *Woolworth v. Miscellaneous Warehouseman's Union*, 629 F.2d 1204 (7th Cir.1980), discharged employees sought to intervene as defendants in a suit brought by their employer against their union seeking to vacate an arbitration award ordering their reinstatement. The district court had granted the employer's motion for summary judgment and had vacated the award. After the union chose not to appeal the decision, the discharged employees moved to intervene for purposes of bringing the appeal. The Seventh Circuit found that the employees satisfied the interest and impairment requirements of Rule 24, and then addressed the adequacy of representation requirement. It stated

---

**5.** In *United States v. Hooker Chemical & Plastics*, 749 F.2d 968 (2d Cir.1984), Judge Friendly stated that "[a]dequacy of representation should be applied so as to provide a functional test of a party's need to intervene". *Id.* at 992 n. 21. He cautioned that courts should not "import into the rule 'fetishes of form,' not required by the Rule's language, that treat adequacy of representation from other than a practical perspective." *Id.*

**6.** The court stated that "[i]ntervenors assert that Hubbard will not appear. The record shows only that he has not yet appeared." *Id.* at 703 n. 1. As mentioned previously, the record in the instant case amply supports the appellants' assertion that Hubbard will not appear.

that "since the Union has withdrawn from the case, the interests of the employees would not be adequately represented by existing parties". 629 F.2d at 1213.

Cases such as *Woolworth* are characterized as situations where the named party has been nonfeasant in its duty of representation. It is well-settled that nonfeasance constitutes inadequate representation. *Cascade National Gas Corp. v. El Paso National Gas Co.*, 386 U.S. 129, 155, 87 S.Ct. 932, 947, 17 L.Ed.2d 814 (1967) (Stewart, J., dissenting) ("complete failure of representation by existing parties"); *British Airways Board v. Port Authority of New York and New Jersey*, 71 F.R.D. 583, 585 (S.D.N.Y.1976); *Moore's Federal Practice* 24.07[4] (2d ed. 1985). In fact, according to Professors Wright and Miller, "the easiest case is that in which the absentee['s] ... interest is not represented at all." Wright & Miller, *supra*, at 519. A difficult question of adequacy of representation does not arise unless the applicant is represented in the action.[7]

Nonfeasance of representation also describes the circumstances of the instant case, where the named party does not appear before the trial court. A party who fails to appear for trial and thus receives a default judgment has failed to represent the interests of the would-be intervenor. Thus, if the union in *Woolworth* failed to appear before the district court to challenge the employer's motion for summary judgment, the interests of the discharged employees would be left inadequately represented. Where significantly protectible interests of a putative party may be adversely affected in a litigation and the sole defendant chooses not to appear, intervention is warranted.

### II.

My disagreement with the court's rather broad ruling, refusing to apply Rule 24(a)(2) whenever a named party has not appeared, is heightened by my conviction that it is quite unnecessary for the proper disposition of this case. For I conclude that each interest claimed by CSC and Mary Sue Hubbard falls short of the requirement that it be a direct, substantial, legally protectible interest that may be impaired by the disposition of the suit. Accordingly, I concur in the denial of intervention.

### A. *First Amendment Interest*

CSC claims that it has a First Amendment speech interest in the subject matter of the litigation. This interest comprises speaking out against Flynn and others, filing bar complaints, or pursuing litigation, all acts upon which plaintiff predicates Hubbard's liability. CSC argues that its ability to protect that speech interest would be impaired or impeded if it did not intervene, because CSC would be "chilled" from continuing to engage in this presumptively protected activity once a default judgment issued against Flynn. This chill would occur, CSC asserts, because it would not continue to speak while parties obtained default judgments against Hubbard based on CSC's speech.

CSC has asserted a protectible interest, in that it identifies its First Amendment right of expression. CSC failed to show, however, that this interest would be impaired if CSC were not permitted to intervene. It may be that in some cases a nonparty could successfully show that its exercise of its speech right would be chilled by a default judgment against the named party in a litigation. The nonparty would refrain from continuing to engage in certain speech activities, if its speech were the basis for the named party's liability. The nonparty would have to convince the court that its ability to protect its speech right would be impaired or impeded by the default judgment.

In this case, no such showing was made. In its appellate brief, CSC stated "[i]t would be impossible for the Church to sit back and watch unscrupulous plaintiffs or lawyers take advantage of Mr. Hubbard's

---

7. *Id.* Cases where the question of adequacy of representation is more difficult include those where the party is adverse to the absentee, where the interests of the absentee and of the

party are different, though perhaps similar, and where the interest of the absentee is identical with that of one of the existing parties. *Id.*

unavailability to obtain huge default judgments *based upon the purported acts of the Church,* and the unsupported allegations of a complaint." CSC did not make this argument to the district court in its written motion to intervene, but rather it did so orally in a one-sentence statement during the hearing. Moreover, CSC did not present any evidence as to why it would refrain from future speech activity if this default judgment issued against Hubbard.

Instead, CSC came forth with a purely conclusory statement. It offered no affidavits to support its claim and no evidence at all that a default judgment against Hubbard would have *any* effect upon CSC. Such conclusory allegations do not entitle CSC to intervention as of right under Rule 24. To find otherwise would suggest that all nonparties could intervene merely by claiming that their special relationship with the named party would chill their speech activities. Obviously, a court is entitled to a sufficiently strong factual showing so that it is assured that the intervenor's speech would indeed be chilled.

### B. *Reputation Interests*

CSC claims that it has a reputation interest in the litigation, because the allegations of the plaintiff "clearly, directly, and substantially" affect the reputation of the church. Moreover, CSC claims that it will suffer direct and serious injury because its founder is accused of serious wrongdoing.

A default judgment against Hubbard is not an adjudication against CSC; such a judgment does not mean that CSC took the actions that were alleged in plaintiff's complaint. Additionally, a party's reputation interest has not been found sufficient to require intervention as of right. In *Edmondson v. Nebraska,* 383 F.2d 123, (8th Cir.1967), the state sued a prisoner who had recovered a default judgment against a prison guard. The state claimed that the default judgment was the result of fraud and collusion between the prisoner and guard and thus the state sought a declaration that the judgment was void. The guard sought to intervene under Rule 24, claiming that the state's allegations of fraud adversely affected his reputation.

The court stated that the suit against the prisoner would not affect the guard's legal interest. It added:

"The mere fact that [the guard's] reputation is thereby injured is not enough. [The guard's] representative has pointed to no legal detriment flowing from this possible finding [of fraud] by the trial court, and we can find none." *Id.* at 127.

In this case as well, CSC merely claims a generalized injury to reputation, but identifies no legal detriment arising from a default judgment against Hubbard. Mary Sue Hubbard also argues that her reputation interest is at stake because the complaint names and implicates her as a key individual in the actions against the plaintiff. Her claim fails for the same reason.

### C. *Economic Interests*

CSC asserts that its economic interests are threatened because the plaintiff will seek to enforce its judgment against Hubbard by levying on the assets of the church. CSC also seems to be arguing that it has an interest in preventing the plaintiff from obtaining a judgment in this case because plaintiff will use offensive collateral estoppel in future actions against the church.

If intervention were denied, however, CSC would not be a party to this case. Any action brought by the plaintiff to obtain assets belonging to the church would necessarily provide the church with an opportunity to present its own defense. Moreover, CSC will not be precluded by the default judgment from making any arguments in future cases. None of the allegations proved against Hubbard would be deemed proved against CSC.

Mary Sue Hubbard also claims that she has an interest in maintaining her husband's assets, which provide support for her and will accrue to her upon his death. She claims that this interest is identical to that which was found sufficient in *SEC v. Flight Transportation Corp.,* 699 F.2d 943 (8th Cir.1983). In that case, a wife undergoing divorce proceedings was permitted to intervene in the SEC's fraud action against the husband. The SEC action would deter-

mine what property belonged to the husband's corporation, as opposed to the husband himself. Additionally, the SEC sought a stay on all other proceedings against the husband, including the divorce action, and a court-appointed receiver to take control of the husband's assets. The court found that this action would have directly affected what assets would be available for distribution to his wife in the ongoing divorce proceedings.

Mary Sue Hubbard's monetary interests in her husband's assets are neither identical, nor similar, to the interests of the wife in *SEC*. Here, her husband's assets are not the subject of this suit, the court is not attempting to take control of the assets, and she has no ongoing claim against the assets of her husband. If intervention were permitted here, whenever one spouse was displeased with the litigation strategy, the investment decisions, or the charitable donations of his or her spouse, the displeased spouse would be permitted to intervene as of right.

A review of the interests assertedly at stake in the underlying litigation reveal that the district court correctly decided that CSC and Mary Sue Hubbard are not entitled to intervene as of right pursuant to Rule 24(a)(2).

### III

Appellants are asserting, then, either their interests as joint tortfeasors or the interests of Hubbard. Both interests fail to satisfy the requirements of Rule 24. This result explains my brothers' concern that what appellants truly seek is not to intervene but to be substituted for the named defendant in order to protect his interests. I agree. I arrive at that conclusion only after a review of the appellants' interests showed that they failed to satisfy the rule's interest and impairment requirements. Thus, the result we reach, denying intervention, would be no different if Hubbard *did* appear but inadequately represented the appellants. Whether appellants attempt to substitute for an existing party or impose themselves in the litigation as a second or third named party, Rule 24 still forbids their intervention.

Although the court correctly, in my view, recognizes that intervention should not be granted, I do not accept its basis, i.e., the fact that the named defendant will not appear precludes a nonparty's right to intervene. To the contrary, that fact itself satisfies the rule's third requirement. Intervention is inappropriate because of appellants' failure to show that they have protectible interests that will be impaired by this litigation. Had appellants made such a showing, I would find that they have a right to intervene, even if the named defendant, for whatever reason, chose not to present a defense.