**Robert J. LANGONE, et al., Plaintiffs,**

v.

**FLINT INK NORTH AMERICA CORPORATION,
Defendant.**

**No. CIV.A.2003–11944–RCL.**

United States District Court,
D. Massachusetts.

July 5, 2005.

David L. Kelston, Adkins, Kelston, Zavez, PC, Boston, MA, for Champion Credit Corporation, Inc., Intervenor.

Kevin J. Lesinski, Seyfarth Shaw, LLP, Boston, MA, Timothy E. Maguire, Seyfarth Shaw, Boston, MA, for Flint Ink North America Corporation, Defendant.

Blair L. Perry, Barnstable, MA, for Mary Spignese, Robert J. Langone, Plaintiffs.

Noah N. Rosmarin, Adkins, Kelston and Zavez, P.C., Boston, for Champion Credit Corporation, Inc., Intervenor.

### REPORT AND RECOMMENDATION ON CHAMPION CREDIT CORPORATION'S MOTION TO INTERVENE (# 19)

COLLINGS, United States Magistrate Judge.

### I. Introduction

This action arises out of a dispute over ownership of certain equipment located in a commercial, industrial building owned by the plaintiff, Robert Langone *et al.* ("Langone"), in Hingham, Massachusetts. Langone asserts various state law claims against the defendant, Flint Ink North America Corporation ("Flint"), alleging, among other things, that Flint improperly sold equipment belonging to Langone to Automated Transfer Technology, Inc. ("ATT"), who is not a party in this action. The issue now pending before the Court is whether Champion Credit Corporation ("Champion"), who purports to hold a first priority security interest in the equipment, may intervene in this action either as of right pursuant to Fed.R.Civ.P. 24(a) or, in the alternative, permissively pursuant to Fed.R.Civ.P. 24(b).

### II. Factual Background

The following facts are gleaned from the various pleadings now before the Court, and have previously been set forth in this Court's Procedural Order dated February 3, 2005(# 32). Langone is a resident of Massachusetts. (Notice of Removal, Exh. A, # 1 ¶¶ 1–3) The defendant, Flint Ink North America Corporation ("Flint"), is a Michigan corporation that develops and manufactures printing toner. (# 1, Exh. A ¶ 5; Answer # ¶ 5; Flint's Opposition to Champion Credit Corporation, Inc.'s Motion to Intervene, # 24 at 4) Beginning December 1, 1998, Langone leased space in its Hingham building to Flint. (# 1, Exh. A, ¶¶ 4, 7) Under the lease, Flint had an option to buy certain equipment that was located on the property. (# 1, Exh. A ¶ 8) Flint has admitted that it never exercised its option to purchase the equipment. (Answer, # 5 ¶ 8) Flint terminated the lease on September 30, 2000. (# 24 at 4) Langone subsequently leased the space to Automated Transfer Technology ("ATT"), another company involved in the toner business. According to Flint, at the time that the lease changed hands, Flint sold to ATT certain industrial and office equipment that Flint had either brought onto the property itself or had acquired during its tenancy. (# 24 at 4) Champion Credit Corporation ("Champion") financed ATT's purchase of the equipment, and, according to Champion, perfected a first priority purchase money security interest in the equipment purchased by ATT. (Champion Credit Corporation, Inc.'s Memorandum in Support of its Motion to Intervene, # 20 at 2)

The landlord-tenant relationship between ATT and Langone deteriorated and ATT sued Langone in Massachusetts Superior Court, Plymouth County, for constructive eviction. (# 20 at 2; # 24 at 5) Following a bench trial on January 15, 2003, the Superior Court ruled, *inter alia*, that Langone had

constructively evicted ATT and issued an order enjoining Langone from denying ATT's access to the building to remove equipment and other personal property. (# 24 at 5; # 20 at 2) Langone, however, continued to deny ATT access to the property, largely because, according to Langone, Langone believed that it owned the property that ATT sought to remove. On September 5, 2003, ATT filed a suggestion of bankruptcy which apparently stayed the landlord-tenant action. (# 20 at 3)

On or about May 27, 2003, Champion filed an action for injunctive relief against Langone in Massachusetts Superior Court, Plymouth County, seeking an order that would permit Champion to enter the premises to collect the property in which it claims to own a security interest. Langone, for its part, filed an action on August 28, 2003 in Massachusetts Superior Court, Plymouth County, against Flint, alleging, *inter alia*,[1] that Flint unlawfully sold Langone's equipment. Flint removed this action on October 3, 2003 pursuant to 28 U.S.C. § 1441 and federal diversity jurisdiction. (Notice of Removal, # 1)

On October 18, 2004, Champion moved to intervene in this action as of right, pursuant to Fed.R.Civ.P. 24(a) or, in the alternative, permissively, pursuant to Fed.R.Civ.P. 24(b). (Champion's Motion to Intervene, # 19) In its proposed complaint in this action, Champion seeks to assert claims against Flint in the event that this Court determines that Langone owns the disputed property. (# 19, Attachment) Flint has challenged Champion's motion to intervene, arguing that any cause of action that Champion may have against Flint is not ripe for adjudication, and that Champion has failed to meet Fed.R.Civ.P. 24's standards for either intervention as of right, or for permissive intervention. (Flint Inc.'s Opp. to Mot. to Intervene, # 24) Langone, whom Champion is suing in state court, supports Champion's intervention. (Memorandum for the Plaintiffs' Relating to Champion's Motion to Intervene, # 31 at 10)

## III. Discussion

### A. Subject Matter Jurisdiction

The Court begins by addressing Flint's argument that the Court would lack subject matter jurisdiction over Champion's claims. Its argument is this: Champion has denominated itself a plaintiff-intervenor under Rule 24. Champion and Langone are both residents of Massachusetts. Flint argues, however, that Champion's interests are more properly aligned with Flint, and that if the Court realigns Champion as a defendant in this action, diversity jurisdiction is lacking over Champion's claims.

▪ The Court begins by noting that "[i]n determining the alignment of the parties for jurisdictional purposes, the courts have a duty to 'look beyond the pleadings and arrange the parties according to their sides of the dispute.'" *American Honda Motor Co., Inc. v. Clair Int'l, Inc.*, 1999 WL 414323, *1 (D.Mass.1999) (quoting *Development Finance Corp. v. Alpha Hous. & Health Care, Inc.*, 54 F.3d 156, 159 (3d Cir.1995)) (other citation and internal quotations omitted.) "Opposing parties must have a collision of interests over the principal purpose of the suit." *Id.* (quoting *Development Fin. Corp.*, 54 F.3d at 159) (internal quotation marks and citations omitted.) *See also U.S.I. Properties Corp. v. M.D. Construction Co., Inc.*, 860 F.2d 1 (1st Cir.1988) (in realigning parties, task is to "determine 'the primary and controlling matter in dispute,' ... and then determine whether any actual collision of interests remains.") (quoting *Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 74, 62 S.Ct. 15, 86 L.Ed. 47 (1941), *cert. denied sub nom Compania de Desarrollo Cooperativo v. U.S.I. Properties Corp.*, 490 U.S. 1065, 109 S.Ct. 2064, 104 L.Ed.2d 629 (1989)).

▪ Even if the Court agrees that Champion should properly be denominated a defendant-intervenor with possible cross-claims against Flint[2], the Court would nevertheless

---

1. Langone's complaint also alleged that Flint breached certain provisions of the lease pertaining to the removal of a trailer, and the clean-up of certain drums and waste from the property.

The District Court granted summary judgment in favor of Flint on those allegations.

2. Langone has the property in which Champion claims an interest and Champion has already

conclude that it has supplemental jurisdiction over Champion's claims, at least to the extent that Champion asserts these claims as of right, pursuant to Rule 24(a). Title 28 U.S.C. § 1367, the supplemental jurisdiction statute, makes different provisions for plaintiff-intervenors and for defendant-intervenors, and the weight of authority permits the exercise of supplemental jurisdiction over defendant-intervenors, even where diversity is lacking. *See e.g., Develop. Finance Corp.*, 54 F.3d at 161 (concluding that § 1367(b) does not deprive court of supplemental jurisdiction over cross claim raised by non-diverse intervening defendant); *Colonial Penn Ins. Co. v. Am. Centennial Ins. Co.*, 1992 WL 350838 (S.D.N.Y.1992). *See also* 28 U.S.C. 1367(b) (1993), David Siegel, Practice Commentary, "The 1990 Adoption of § 1367(b), Codifying 'Supplemental' Jurisdiction," ("Practice Commentary"), at 833 (suggesting that supplemental jurisdiction would exist for defendant-intervenor's counterclaim against non-diverse plaintiff). Therefore, even under the realignment that Flint suggests, the Court concludes that supplemental jurisdiction would exist.[3]

## B. Intervention Analysis

### 1. *Intervention as of Right*

A party who seeks to intervene as of right pursuant to Rule 24(a) must satisfy four requirements:

---

sued Langone in state court over the ownership of the property. Champion's proposed complaint, however, makes no direct claim against Langone. Nevertheless, if permitted to intervene, Champion would undoubtedly prefer to see Flint prevail.

**3.** It is less clear whether the Court would have jurisdiction over Champion's claims asserted permissively. Prior to the enactment of the Judicial Reform Act of 1990, and the supplemental jurisdiction statute, the First Circuit required an independent basis of jurisdiction for permissive intervention under Rule 24(b). *Int'l Paper Co. v. Town of Jay*, 887 F.2d 338, 346 (1st Cir.1989). *See also* Practice Commentary, at 833. Section 1367(b), however, makes no distinction between intervention as of right under Rule 24(a) and permissive intervention under Rule 24(b), and § 1367 arguably provides independent jurisdiction over a permissive defendant-intervenor's

First, the application must be timely. Second, the applicant must claim an interest relating to the property or transaction which is the subject of the action. Third, the applicant must be so situated that the disposition of the action may as a practical matter impair or impede her ability to protect that interest. Fourth, the applicant must show that her interest will not be adequately represented by existing parties.

*Travelers Indemnity Co. v. Dingwell*, 884 F.2d 629, 637 (1st Cir.1989) (citing *Moosehead Sanitary District v. S.G. Phillips Corp.*, 610 F.2d 49, 52 (1st Cir.1979)).

"An applicant who fails to meet any one of these requirements cannot intervene as of right under Rule 24(a)(2)." *Id.* (citation omitted). The Court considers these factors *seriatim.*

### a. *Was Champion's Motion to Intervene Timely?*

■ "There is no bright-line rule delineating when a motion to intervene is or is not timeous. Instead, courts must decide the question on a case by case basis, examining the totality of the relevant circumstances." *Banco Popular de Puerto Rico v. Greenblatt*, 964 F.2d 1227, 1230 (1st Cir.1992) (citations omitted). Nevertheless, courts must consider the following four factors: "(1) the length of time the applicants knew, or reasonably should have known, of their interest before they petitioned to intervene ...; (2) the prejudice to existing parties due to appli-

---

claims. But this question is hardly a settled one. *Cf. Liberty Mut. Group v. Hillman's Sheet Metal and Certified Welding, Inc.*, 168 F.R.D. 90, 91 (D.Me.1996) (concluding that under First Circuit precedent § 1367 does not provide independent basis for jurisdiction for non-diverse party seeking to intervene permissively as defendant); *Conseco v. Wells Fargo Fin'l Leasing, Inc.*, 204 F.Supp.2d 1186, 1193 (S.D.Iowa 2002); (supplemental jurisdiction exists for compulsory counterclaims of party seeking to intervene permissively); *Scottsdale Ins. Co. v. Subscriptions Plus, Inc.*, 2000 WL 34236739, *5 (W.D.Wis.2000) (concluding that § 1367 provides "basis for independent jurisdiction" but, pursuant to § 1367(c)(4), declining to exercise jurisdiction over party seeking to intervene permissively as defendant only to assert affirmative relief against co-defendants even though it lacked diversity with plaintiff.)

cants' failure to petition for intervention promptly ...; (3) the prejudice that applicants would suffer if they were not allowed to intervene ...; and (4) any unusual circumstances militating for or against intervention ...." *Fiandaca v. Cunningham*, 827 F.2d 825, 834 (1st Cir.1987) (citing *Culbreath v. Dukakis*, 630 F.2d 15, 20–24 (1st Cir.1980)) (internal citations omitted).

Champion moved to intervene in this action on October 18, 2004. Champion asserts that it learned for the first time of the pendency of this action at a pre-trial conference in the pending state court action on August 23, 2004. Flint maintains that Champion learned of this action in June 2004–four or five months before Champion moved to intervene. The action commenced in August, 2003, ten months before Flint maintains that Champion learned of the pendency of this action. Although Champion may have moved more quickly to intervene-even under its version of events, it waited two months before filing its motion to intervene—the Court cannot say that Flint or Langone would be unduly prejudiced by the delay caused by Champion's failure to intervene earlier. Although Flint argues that discovery closed in May, 2004, even by Flint's reckoning the earliest that Champion could have moved to intervene was June, 2004, after discovery had already closed. Further, though Flint has argued that the District Court has already ruled on a motion for summary judgment, the only issue to have been decided in that motion concerned the liability surrounding clean-up of the drums, and that issue has nothing to do with Champion.

On the other hand, the case as it stands is poised for trial. In the Court's view, though the timeliness requirement standing alone is not determinative, other factors set out below convince the Court that Champion will suffer no prejudice if denied intervention, whereas the existing parties will be forced to conduct further discovery.[4]

### b. Does Champion have an Interest in this Action?

■ The Court begins by examining the nature of Champion's interest in this dispute.

"[N]o bright line of demarcation exists ...," *Conservation Law Foundation of New England v. Mosbacher*, 966 F.2d 39, 41 (1st Cir. 1992), in defining the nature of the "interest" required by Rule 24 to warrant a party's intervention. Nevertheless, the First Circuit has emphasized that while " '[t]here is no precise and authoritative definition of the interest required to sustain a right to intervene,' " *id.* at 42 (quoting *Travelers Indem. Co.*, 884 F.2d at 638), it has reiterated " 'that the intervenor's claims must bear a sufficiently close relationship to the dispute between the original litigants,' " *id.* (other internal quotation marks omitted,) and that " '[t]he interest must be direct, not contingent.' " *Id.* Further, the First Circuit has acknowledged that "the determination of whether an interest is sufficient for Rule 24(a)(2) purposes is colored to some extent by the third factor-whether disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest." *Id.*

At first blush, Champion appears to have met this requirement as it appears to "claim[ ] an interest relating to the property or transaction which is the subject of the action," Fed.R.Civ.P. 24(a): *viz.,* it claims to have a security interest in the equipment at issue here. However, the specifics of Langone's complaint against Flint–the subject of the action-and, indeed, Champion's proposed complaint against Flint, suggest that Champion's interest in this suit is remote and contingent. In his complaint, Langone asserts essentially two claims: first, he claims that Flint sold equipment to ATT that was in fact owned by Langone. (# 1, Exh. A.¶ 12) As a result of this "unauthorized 'sale' " Langone maintains that he has suffered damages because he has had to defend against lawsuits by both ATT and Champion, and because has been unable to re-let the premises because of the ongoing lawsuits. (# 1, Exh. A.¶ 12) Second, he claims that Flint breached certain provisions of its lease by failing to remove drums containing industrial chemi-

---

**4.** Although Champion asserts that it will rely on discovery already conducted between the parties, (# 20 at 6), Flint quite rightly argues that it will be entitled to conduct discovery against Champion in order to defend against Champion's cross claims. (# 29 at 2)

cals from the property. (# 1, Exh. A ¶¶ 12–13) The second claim was disposed of on summary judgment in favor of Flint, and only the first claim remains. Champion claims an interest in the adjudication of this claim.

The Court notes that Langone continues to possess the equipment at issue here and Flint does not claim a continuing ownership interest in the equipment. Flint claims, as a defense, that it was entitled to convey the property to ATT. Thus, if permitted to intervene, Champion has two possible interests in this litigation: 1) in ensuring that Flint be determined to be the rightful owner of the property at the time Flint sold the property to ATT; 2) in recovering from Flint in the event that Langone is determined to be the rightful owner.

As for the first possible interest, Champion was not a party to the agreement or to the negotiations between Flint and Langone, and will have nothing to contribute in resolving the particulars of that dispute. *Cf. Acton Co., Inc. of Mass. v. Bachman Foods, Inc.,* 668 F.2d 76, 82 n. 3 (1st Cir.1982) (noting distinction between absentee who was party to agreement and absent guarantor who was not a party to contract and possessed no rights under contract). Champion seeks to assert only a "contingent" interest against Flint in the event that the Court determines that Flint unlawfully sold the property. Indeed, each of the claims asserted in Champion's proposed complaint, (# 20, Attachment), are couched in the conditional language "in the event it is found that Langone is the owner of the equipment." Although Champion may have direct claims against Langone, it does not seek to assert those claims against Langone in this action, presumably because it has already asserted those claims in a pending state court action.[5] Under Champion's own characterization of its claims in this case, the Court concludes that Cham-

pion has not established that it has an interest in this litigation of the sort contemplated by Rule 24(a).[6]

*c. Will the disposition of this action as a practical matter impair or impede Champion's ability to protect its interest?*

Even assuming *arguendo* that Champion had a sufficient interest in this action to satisfy Rule 24(a), the Court would nevertheless conclude that this prong of the analysis is dispositive. The inquiry here is whether Champion "would be substantially affected in a practical sense by the determination made in an action." Fed.R.Civ.P. 24, Advisory Committee Notes to the 1966 Amendment. Champion argues that it will suffer harm if not allowed to participate here because the case will determine ownership of the equipment. (# 20 at 6) Champion misunderstands the nature of what is at stake in this action. Here, Langone seeks damages resulting from Flint's allegedly unlawful sale of Langone's property. Although as a practical matter, a determination of Flint's liability will necessarily require a finding one way or another about Flint's ownership of the property at the time of the sale to ATT, actual title to the equipment is not at stake here. Langone does not seek a declaratory judgment to quiet title, for example, and no one is arguing that Flint has a current ownership stake in the equipment. If Langone prevails, Langone will be entitled to damages, and the issue of title between Langone and Champion will remain to be decided. If Flint prevails, Flint claims no continuing ownership interest in the equipment. In other words, the fighting issue here is not the right to possess the equipment. Further, a finding in this action concerning ownership of the equipment at the time of the sale to ATT will have no effect on the state court's determination of ownership, and will have no res judi-

---

**5.** Indeed, in the state court action Champion will no doubt argue that Flint lawfully sold the property to ATT. Furthermore, to the extent that this case involves property, state courts have arguably assumed jurisdiction over that property in two pending suits.

**6.** The parties have characterized the issue here as one of ripeness. The Court notes that a "ripe-

ness" inquiry yields much the same result-namely, that Champion's claim against Flint "involves uncertain and contingent events that may not occur as anticipated or may not occur at all." *Ernst & Young v. Depositors Economic Protection Corp.,* 45 F.3d 530, 536 (1st Cir.1995) (internal quotations and citation omitted).

cata effect on Champion, who is not a party to the action.[7] Thus, the Court is hard-pressed to see how Champion's ability to vindicate its interest in title to the equipment will be impaired or impeded by this action: it has already filed suit in state court against Langone, and it may pursue a separate action against Flint (or seek to join Flint in the state court action) if it fails to prevail against Langone in the state court action. *Cf. Flynn v. Hubbard,* 782 F.2d 1084, 1092–1094 (1st Cir.1986) (Coffin, J., concurring) (noting that would-be intervenors' interests would not be impaired by litigation where intervenors would not be bound by judgment and would have subsequent opportunity to litigate their claims), *cited in Conservation Law Foundation of New England,* 966 F.2d at 42–43. Indeed, a similar argument was rejected in *American Honda Motor Co., Inc. v. Clair Int'l, Inc.,* 1999 WL 414323, *3 (D.Mass. 1999), in which the absent party maintained that it might have a future claim against the plaintiff, with whom its interests were aligned. The Court determined that the absent party would suffer no prejudice if the litigation continued in its absence, and noted that "the continuation of th[e] action ...would not injure [the absent party's] ability to pursue any such legal claims against [the plaintiff], in an appropriate forum, in a separate case." *Id.* That analysis pertains here.

Finally, it is notable that Champion does not seek full participation in this action. It claims that if permitted to intervene, it would not request discovery, and would, essentially, await the liability determination between Langone and Flint. The Court sees two problems with this approach. First, it bespeaks the contingent nature of Champion's claims. Second, that Champion appears willing to accept[8] whatever resolution of the dispute the Court determines between Flint and Langone suggests also that Champion

concedes Flint's adequacy to represent Champion's interests here.

Thus, because Champion was not a party to the contract at issue here; because Champion itself concedes that its claim against Flint is remote and contingent; and because Flint does not assert a current ownership interest in the property at issue here, the Court concludes that Champion's interest is insufficient to warrant intervention as of right.

### d. Will Flint adequately represent Champion's interests?

▮ Flint asserts that it and Champion both share the common goal of determining that Flint was the proper owner of the equipment that it transferred to ATT. When an existing party shares "the same ultimate goal" as a party who seeks to intervene, the adequacy of representation is presumed. *Moosehead Sanitary Dist. v. S.G. Phillips Corp.,* 610 F.2d 49, 54 (1st Cir.1979). In order to overcome that presumption, a party must ordinarily demonstrate "adversity of interest, collusion, or nonfeasance." *Id.* (citation omitted). Here, Champion has failed to make any argument that Flint will inadequately represent its interests beyond reiterating its contention that it will be harmed if not permitted to intervene. Indeed, Champion's proposed complaint makes plain that Champion's interest and Flint's interests diverge only upon a finding that Flint improperly conveyed the property. Not only has Champion failed to overcome the presumption in favor of adequate representation, it has failed to make any argument that Flint will inadequately represent its interests beyond reiterating its contention that it will be harmed if unable to intervene. Indeed, as noted, Champion seems willing to concede Flint's adequacy to represent its interests on the question of whether Flint was entitled to transfer the subject property to ATT.

---

7. Thus, the central premise of Champion's chief argument in favor of intervention is flawed-namely, that "the pendency and outcome of this case essentially obviate Champion's Superior Court Action against Langone and will determine Champion's rights." (# 20 at 8)

8. If the Court allows Champion to intervene for the limited purpose of awaiting the determina-

tion of Flint's liability in this case, Champion appears to accept that it will be bound by a judgment in which it declined full participation. Perversely, then, Champion's ability fully to vindicate its title in the equipment in state court may be impaired if it is allowed to intervene in the minimal and contingent way that it suggests.

### e. *Conclusion*

For all the above reasons, the Court concludes that Champion has failed to satisfy the requirements of Rule 24(a), and the Court recommends denying Champion's motion to intervene of right. Although some inefficiency results in adjudicating the issue of Flint's ownership at the time of the sale to ATT in parallel proceedings, it is an inefficiency that well-settled federal law contemplates, *see e.g. Villa Marina Yacht Sales, Inc. v. Hatteras Yachts,* 915 F.2d 7, 16 (1st Cir.1990), and that both Langone and Champion could have avoided with earlier procedural devices. The Court further notes that, although there is a risk that the federal court and the state court may reach different conclusions on the question of Flint's ownership, no party in this action is at risk of incurring "inconsistent obligations" in the sense contemplated by Rule 19's "indispensible party" analysis. *See, e.g., Delgado v. Plaza Las Americas, Inc.,* 139 F.3d 1, 3 (1st Cir.1998) (noting that " '[i]nconsistent obligations' are not ... the same as inconsistent adjudications or results" and noting that "the mere possibility of inconsistent results in separate actions does not make the plaintiff in each action a necessary party to the other.") (citations omitted). *See generally* 4 *Moore's Federal Practice,* § 19.03[4][d] (Matthew Bender 3rd ed.).

### 2. *Permissive Intervention Pursuant to Rule 24(b), Fed.R.Civ.P.*

As noted previously, *supra* note 3, the Court has some doubt whether subject matter jurisdiction exists over Champion's claims asserted permissively pursuant to Rule 24(b). The Court nevertheless would also recommend denying permissive intervention here. Rule 24(b) permits a Court to allow a party to intervene "when an applicant's claim or defense and the main action have a question of law or fact in common," Fed.R.Civ.P. 24(b), and when allowing intervention will not "unduly delay or prejudice the adjudication of the rights of the original parties." *Id.* Furthermore, a court may consider:

the nature and extent of the intervenor's interest, whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties, whether

the applicant will benefit by the intervention, whether the intervenor's interests are adequately represented by the other parties, and whether the intervenors will significantly contribute to the full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

*In re Acushnet River & New Bedford Harbor Proceedings,* 712 F.Supp. 1019, 1023 (D.Mass.1989) (citations omitted.) In this case, Champion's claim and the main action here contain the same question of law or fact-namely, whether Flint was entitled to transfer the equipment to ATT. Nevertheless, the Court concludes that because Champion has a ready forum to adjudicate its own claims against Langone (and has already filed suit to protect those claims), and because it asserts claims of only a contingent nature here, intervention in this case would serve only to delay the adjudication of Langone's and Flint's claims. Furthermore, Champion will not significantly add to the development of the question of Flint's ownership at the time of the sale to ATT: Champion purports to hold a security interest in the property Flint conveyed to ATT, but it has nothing to add to the determination of whether Flint was entitled to sell ATT the equipment in the first instance. For these reasons, and for the reasons discussed above, the Court recommends denying Champion's Motion to Intervene pursuant to Rule 24(b).

### IV. *Conclusion*

For all the above reasons, I RECOMMEND that Champion Credit Corporation's Motion to Intervene (# 19) both as of right pursuant to Rule 24(a), Fed.R.Civ.P. and permissively pursuant to Rule 24(b), Fed. R., Civ. P., be DENIED.

### V. *Review by the District Judge*

The parties are hereby advised that pursuant to Rule 72, Fed.R.Civ.P., any party who objects to this recommendation must file a specific written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is

made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed.R.Civ.P., shall preclude further appellate review. *See Keating v. Secretary of Health and Human Services,* 848 F.2d 271 (1 Cir., 1988); *United States v. Emiliano Valencia–Copete,* 792 F.2d 4 (1 Cir., 1986); *Scott v. Schweiker,* 702 F.2d 13, 14 (1 Cir., 1983); *United States v. Vega,* 678 F.2d 376, 378–379 (1 Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1 Cir., 1980); *see also Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).